**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:25-cv-81070-AMC**

FERNANDO SERRATOS, on behalf of
Himself and others similarly situated,

      Plaintiff,

v.

SYNERGY INSURANCE AFFILIATES
LLC,

      Defendant.

_____/

**<u>DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant Synergy Insurance Affiliates, LLC ("Synergy") files its reply memorandum of law in support of its Motion to Dismiss [DE 10].

## I.    INTRODUCTION

Whether the Court should dismiss the Complaint hinges on two issues. Dismissal is warranted if text messages are not "telephone calls" under 47 U.S.C. § 227(c)(5), the TCPA provision that creates a private cause of action. Dismissal is otherwise warranted if a cell phone subscriber is not a "residential telephone subscriber" for purposes of the federal Do Not Call List. As demonstrated in Synergy's Motion to Dismiss, the Court should dismiss the Complaint because, as a matter of plain textual analysis and common sense: i) text messages are not telephone calls and ii) a cell phone is not a residential phone. A rational reading of the plain text of the TCPA leads directly to dismissal of Plaintiff's Complaint for both reasons.

In his response, Plaintiff does not substantively address the first issue at all. Instead, Plaintiff attempts to reframe the first issue as whether the TCPA's Do No Call List provisions apply to text messages. *See* DE 11, at p. 8. That question is relevant to the second issue, not the first. The first issue concerns whether Congress created a private right of action under Section 227(c)(5) for the receipt of text messages; it has nothing to do with whether the Do Not Call List provisions apply to text messages. Dismissal is warranted if the Court determines there is no

private right of action for the receipt of text messages, irrespective of whether text messages are subject to the Do Not Call List provisions. Because it is apparent text messages are not within the scope of the private right of action granted by the TCPA, the Court may dismiss the Complaint on that basis alone.

## II.     *LOPER* AND *MCLAUGHLIN* ELIMINATED *CHEVRON* DEFERENCE

Despite that the Supreme Court's decision in *Loper* returned courts to their traditional function "to independently interpret" statutes, Plaintiff repeatedly refers to FCC orders interpreting the TCPA. *See* DE 11, pp. 1, 6-7 and 12-16.[1] This Court is free to disregard those interpretations. *McLaughlin* holds that courts are "not bound by the FCC's interpretation of the TCPA," but rather courts "should interpret the statute as courts traditionally do . . . ." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2022-23 (2025). Post-*McLaughlin*, district courts are required to independently interpret the TCPA's statutory language and not automatically defer to the FCC.

Unable to overcome the plain language of the TCPA, Plaintiff asks the Court to cede its authority and blindly defer to the FCC's interpretations of the TCPA. Plaintiff asks the Court to go back in time and follow the Eleventh Circuit's pre-*McLaughlin* analysis of the Hobbs Act that deprived trial courts of *any* ability to interpret the TCPA contrary to FCC orders. *See Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1111 (11th Cir. 2019) (Pryor, J. concurring with the entire panel joining) (discussing the Eleventh Circuit's Hobbs Act precedent). Before *McLaughlin*, even where trial courts found the FCC's interpretation of "residential telephone subscriber" *ultra vires*, they were powerless to rule in conflict with such interpretations. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1342 (S.D. Fla. 2022) ("Despite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision, the Court must enforce the rules and regulations set forth by the FCC."). The *McLaughlin* holding restored the proper balance between federal courts and federal agencies. The courts interpret the law; the agencies apply it.

Plaintiff nevertheless argues as if agency orders still command judicial deference. *See* DE 11, pp. 6-7, 9, and 12-16. The Supreme Court's *Loper* decision undercuts Plaintiff's approach. Agency interpretations of federal law have minimal value, where, as here, the interpretations are

---

[1] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024)

neither contemporaneous with the passage of the statute nor consistent. Due respect to agency interpretations is "especially warranted when an Executive Branch interpretation was issued roughly ***contemporaneously*** with enactment of the statute and ***remained consistent over time***." *Loper*, 603 U.S. at 386, 388, 394 (emphasis added). The interpretations at issue here were neither contemporaneous nor consistent, and they were adopted more than a decade after the TCPA was enacted. *See In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 (2003). Indeed, the FCC did not extend the DNC Regulations to text messaging until ***2023***. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

Finally, to be certain, the TCPA does not give the FCC authority to alter the TCPA's plain language. The TCPA does provide the FCC certain implementation authority, but what it cannot do is *alter* the choices Congress made. *See Ins. Mktg. Coal. Ltd. Commc'ns Comm'n,* 127 F.4th 303, 312-17 (explaining the reaches of the FCC's authority and finding the FCC issued an interpretation of the term "prior express consent" in conflict with the plain, common law meaning). Nowhere does the TCPA give the FCC the authority to redefine "call" or "residential telephone subscriber" beyond the plain meaning of those terms.

## III. CONGRESS DID NOT CREATE A PRIVATE RIGHT OF ACTION UNDER SECTION 227(C)(5) FOR TEXT MESSAGES

Plaintiff does not respond to the first issue head-on: whether the statutory text of 47 U.S.C. §227(c)(5) creates a private right of action based on text messages. *See* DE 11, pp.8-19. Instead, Plaintiff focuses on whether the Do No Call provisions apply to text messages. *Id.* The distinction between the scope of a federal law's substantive prohibitions and the existence or extent of private rights of action is critical. The Supreme Court in *Alexander v. Sandoval* established private rights of action to enforce federal law *must be created by Congress* and cannot be inferred from regulatory authority alone. 532 U.S. 275 (2001). As explained by the *Alexander* Court:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy*. Statutory intent on this latter point is determinative. *Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.*

*Id*., at 286-87 (internal citations and quotations omitted) (emphasis added). "Language in a regulation may invoke a private right of action that Congress through statutory text created, *but it may not create a right that Congress has not*." *Id*., at 291 (citing *Touche Ross & Co., v. Redington*, 442 U.S. 560, 577, n.18 (1979) ("[L]anguage of the statute and not the rules must control.") (emphasis added). The private right of action Congress created under 47 U.S.C. § 227(c)(5) exists only for those who received multiple "telephone calls." 47 U.S.C. § 227(c)(5); *see also Davis v. CVS Pharmacy, Inc*., 4:24-cv-477-AW-MAF, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025), *2. In *Davis*, the district court discussed how the TCPA regulates both telephone calls and text messages broadly while limiting private enforcement to telephone calls only. *Davis*, 2025 WL 2491195, *2 ("But however Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'"). The extent of the private right of action created by Congress under Section 227(c)(5) is limited to the extent of the statute, and FCC regulations or interpretations cannot expand it to apply to text messages.

> **A.** **Congress Did Not Ratify the FCC's 2003 Interpretation that the Term "Call" Includes Text Messages When It Passed the TRACED Act.**

Plaintiff argues when Congress amended the TCPA in 2019 with the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (the "TRACED Act"), it adopted the FCC's interpretation. *See* DE 11, pp.8-9. Plaintiff is wrong. Congress did not ratify the FCC's interpretive approach. Instead, Congress explicitly set out text messages as a separate statutory category with comprehensive definitions. *See* 47 U.S.C. § 227(e), (h)-(j). Importantly, the TRACED Act did not make any modifications to Section 227(c)(5).

The TRACED Act added three new subsections to Section 227: subsection (h) requiring annual reporting to Congress on robocall enforcement, subsection (i) establishing information sharing processes, and subsection (j) mandating robocall blocking services. Subsection 227(i)'s reference to text message is limited specifically to Sections 227(b) and 227(e). Congress' deliberate choice to mention text messages only in relation to Sections 227(b) and 227(e), reinforces that Congress did not intend to extend the private right of action created under Section 227(c)(5) to text messages.

Plaintiff's reliance on the FCC's 2023 Order is misplaced for the additional reason discussed above: the FCC "may not create a right where Congress has not." *Alexander*, 532 U.S. at 291. And, while Plaintiff cites to several cases in support of this argument, none of those cases interpret the addition of Section 227(i) as expanding private enforcement rights under Section 227(c)(5). For example, *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 WL 6693134(W.D.N.C. Nov. 12, 2020) did not interpret section 227(c)(5) at all, but only addressed whether an unwanted text message constituted sufficient injury to confer Article III standing. And none of the federal decisions Plaintiff cites engage in a plain text interpretation of Section 227(c)(5); they instead rely on FCC Orders or the purported "purpose" of the TCPA. *See Dawson v. Porch.com*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at \*10 (W.D. Wash. Nov. 13, 2024) (relying on the 2023 FCC Order); *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at \*3 (N.D. Cal. Oct. 7, 2025) (relying on prior Ninth Circuit precedent based on *Chevron* deference). Ironically, while the *Wilson* Court stated it would look "to the plain meaning of the text," it did everything but that. First, it relied on prior Ninth Circuit precedent based on *Chevron* deference. *Wilson*, 2025 WL 2856295, at \*2. Next, it relied on the purported "purpose and structure of the TCPA," focusing on how Congress defined "telephone solicitation" and what Congress directed the FCC to do in terms of regulation, rather than focusing on the actual language Congress used to create private right of action under Section 227(c)(5). *Id*., at \*3. Moreover, even if the text were ambiguous, the principles of statutory construction would not support "telephone call" to mean text message when text messaging did not exist in 1991 when the TCPA was enacted. *See* DE 10, Motion to Dismiss, pp. 6-7.

### B.      Plaintiff Relies on Pre-*McLaughlin* and Inapposite Cases

As noted above, *McLaughlin* was a game changer. Because Plaintiff does not want the Court to engage in any fresh statutory interpretation, Plaintiff ignores the significance of the *McLaughlin* holding and asks to the Court to rely on pre-*McLaughlin* cases. As these prior decisions show, before *McLaughlin* courts simply *assumed* text messages fell within the definition of telephone calls, without preforming any sort of textual analysis. *See e.g*., *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting neither party disputed whether a text message was a call); *Ins. Mktg. Coal*., 127 F.4th at 303, n.2 (relying on FCC's interpretation of "call" to include text messages); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (same); *Pariseau v. Built USA,* LLC, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022) (same); *Drazen*

*v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) (in the context of evaluating Article III standing in TCPA text message cases, assuming, without deciding, that text messages were covered by the TCPA); *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 985-86 (9th Circuit 2023) (same); *Gadelhak v. AT&T Services, Inc*., 950 F.3d 458, 463 (7th Cir. 2020) (same); *Legg v. Voice Media Group, Inc*., 990 F. Supp. 2d 1351 (S.D. Fla. 2014) (relying on Ninth Circuit precedent based on *Chevron* deference); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. Appx. 365, 370 (6th Cir. 2015) (applying *Chevron* deference); *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 954 (9th Cir. 2009) (same); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) (relying on *Campbell-Ewald* where the issue before this Court was not decided and no party disputed that a text message was a call).

Plaintiff also relies on a recent case from this district: *Bosley v. A Bradley Hosp'y LLC*, No. 25-cv-22336, 2025 WL 2686984, \*5 (S.D. Fla. Sep. 18, 2025) (Bloom, J). In stating "a text message constitutes a 'call' under the TCPA", Judge Bloom relied on pre-*McLaughlin* cases. *Id.* ("There is *no dispute* that Plaintiff has adequately alleged the first two elements . . .given that a text message constitutes a 'call' under the TCPA . . . .") (emphasis added). Plaintiff asks this Court to do the same, despite that the language of the TCPA itself does not support this assumption.

Plaintiff also relies on inapposite cases addressing whether the regulation found at 47 C.F.R. § 64.1200(d) applied to text messages. *See e.g., Ragsdale v. LeadPoint, Inc*., 2:24-cv-04542-MCS-SK, 2024 WL 5424125, \* 3 (C.D. Cal. Nov. 5, 2024) (relying on FCC's 2003 Order to hold that text messages are considered "calls" for purposes of 47 C.F.R. § 64.1200(d)(4)); *Watkins v. Eyebuydirect, Inc*., No. 1:25-CV-538-RP (W.D. Tex. Aug. 28, 2025). *Ragsdale* and *Watkins* are inapplicable because whether the FCC's regulations apply to text messages is irrelevant to deciding whether the private right of action created by Congress under Section 227(c)(5) applies to text messages. The issue before this Court here was not decided by either *Ragsdale* or *Watkins*.

Regarding the holding in *Wilson v. Skopos Fin., LLC*, 6:25-cv-00376-MC, 2025 WL 2029274, \*4 (D. Or. July 21, 2025), the court did not engage in a plain text interpretation of Section 227(c)(5) as is now required. *Id.* Rather, the *Skopos* Court relied on the FCC's 2003 Order and looked to "Congress's overarching goals for the TCPA." *Id*. Indeed, the *Skopos* Court's rationale and holding contravenes the Supreme Court's precedent in *Alexander v. Sandoval* that "private rights of action to enforce federal law must be created by Congress", 532 U.S. 286-87, not FCC regulations or orders interpreting statutory text.

Finally, Plaintiff cites to *Barton v. Temescal Wellness*, LLC, 525 F. Supp. 3d 195, 198 (D. Mass. 2021) for the proposition that the Supreme Court ratified the FCC's interpretation that a text message was a call for purposes of the TCPA. *See* DE 11, at p. 11. *Barton* incorrectly claimed Supreme Court ratification and mischaracterizes the holding in *Campbell-Ewald*. In *Campbell-Ewald*, Justice Ginsburg merely stated "[a] text message to a cellular telephone, *it is undisputed*, qualifies as a 'call'"—treating the issue as undisputed rather than deciding it as a matter of law. *See Campbell-Ewald*, 577 U.S. at 156 (emphasis added). The parties did not litigate, and the Supreme Court did not resolve whether a text message is a phone call under the TCPA's private right of action provision.

Accordingly, this Court is not bound by any precedent concerning the question of whether a text message is a phone call under 47 U.S.C. § 227(c)(5). As the plain text of the statute shows, text messages do not give rise to a private cause of action under the TCPA. For this reason alone, the Court should dismiss Complaint with prejudice.

## III.    THE DO NOT CALL LIST PROVISIONS DO NOT PROTECT CELL PHONE SUBSCRIBERS

Plaintiff agrees the term "residential telephone subscriber" should be given its ordinary meaning. *See* DE 11, p. 3. Plaintiff starts his analysis by relying on the definition of "telephone solicitation" found in Section 227(a)(4). *Id.*, at p. 4. The term "telephone solicitation," however, does not impact the analysis. It is correct that the regulation at issue, 47 C.F.R. § 64.1200(c)(2), pertains to "telephone solicitations." This term is defined to include a "telephone call or message." 47 U.S.C. § 227(a)(4). Where Plaintiff's argument goes astray, however, is that the term "message" refers to prerecorded voice messages and fax messages; it does not refer to cell phone text messages—which did not come into existence until after the enactment of the TCPA. *See Jones v. Blackstone Med. Services, LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025) ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . ."). The term "message" appears throughout the TCPA and this consistency provides its meaning. *See, e.g.*, 47 U.S.C. § 227(b)(1)(B) (prohibiting "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (prescribing standards for fax messages and "artificial or prerecorded voice messages"). These provisions, along with the

7

definition of "telephone solicitation" were part of the originally enacted TCPA. *See* PL 102–243, December 20, 1991, 105 Stat 2394.

Plaintiff's argument is fundamentally flawed because it is premised on the unsupportable contention that Congress' use of the term "message" referred to a technology that did not exist in 1991. While "message" is used throughout the TCPA, "text message" did not appear in the TCPA until 2018, when Congress added the term into a *different section* of the TCPA. *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Plaintiff's position that the term "message" referred to technology that did not exist and which was later addressed by Congress in subsequent legislation using the term "text message" defies core principles of statutory interpretation. *See, e.g.*, *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout.").

In one of the first cases to evaluate this issue post-*McLaughlin*, a Central District of Illinois court determined 47 U.S.C. § 227(c) *does not* apply to text messages. *See Jones*, 2025 WL 2042764, at *1. The court engaged in its own statutory analysis, determining:

> Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. . . . Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Id.* at *3-4 (internal quotations and citations omitted). The court also analyzed the FCC's orders, noting the orders regarding text messages only discussed Section 227(b), and not Section 227(c). *See id*. at *4-5. While the court afforded respect to the FCC's view, it properly held the plain language of the TCPA controlled, holding "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id*. at *5.

Next, Plaintiff errs in interpreting the term "residential telephone subscriber" in 47 U.S.C. § 227(c), parsing each word separately to arrive at an untenable reading. The Supreme Court noted in *Duguid* that modern day advances in technology are no basis to "eschew[] the best reading of" the TCPA. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Plaintiff's endeavor to isolate the terms "residential" and "subscriber" is self-defeating and unnatural. Statutory words cannot be read in isolation. *See In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010) ("We do not look at one word or term in isolation, but instead we look to the entire statutory context.").

Plaintiff takes a simple statutory term: "residential telephone subscriber," and parses out each word to conclude that this term means a subscriber to a telephone used for non-business purposes. *See* DE 11, p. 5. This ends-focused, forced reading eschews the most natural reading: that a "residential telephone subscriber" is simply a subscriber to a residential telephone line.[2] This is particularly true given that the term "cellular telephone subscriber" exists in common parlance. To have the former partially (or perhaps completely) subsume the latter is nonsensical.

Plaintiff attempts to read "residential" as only a modifier of "telephone subscriber" and suggests that Congress used this phrasing to distinguish between a person who uses a telephone for personal use from one who use a telephone for "business" use. *See* DE 11, p. 6. That position lacks merit. Plaintiff offers no explanation why Congress would use such tortured phrasing to draw such a simple distinction. Moreover, Plaintiff's interpretation would suggest that "residential" in fact has no connection to the word "residence," and would cover someone irrespective of any residence. That is at odds with the plain meaning of the text. In short, it is "understood that a 'residential telephone' referred to a land line at a residence." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta, J. dissenting); *Turizo*, 603 F. Supp. 3d at 1340. The modern transition from landlines to cell phones cannot supplant the obvious and natural reading of "residential telephone subscriber." *See Duguid*, 592 U.S. at 409.

Finally, Plaintiff turns to the Do-Not-Call Implementation Act, a 2003 unrelated statute largely relating to the Federal Trade Commission, to try to expand the TCPA's plain language. *See* DE 11, p. While the statute encourages the FTC and FCC to act consistently, 15 U.S.C. § 6153, the statute does not amend the TCPA or mention cellular telephones, much less alter the plain meaning of "residential telephone subscriber." *See, e.g.*, *Hadden v. United States*, 661 F.3d 298, 303 (6th Cir. 2011) ("But our task in this case is not to fashion a sort of judicial string theory, under which we develop universal principles that harmonize different statutes with different language.").

---

[2] The term "residential telephone subscriber" long predates the advent of cell phones. *See, e.g.*, *Jeffrey v. Sw. Bell*, 518 F.2d 1129, 1130 (5th Cir. 1975) (discussing a suit brought by "[r]esidential telephone subscribers in Dallas, Texas").

**IV.     CONCLUSION**

For the foregoing reasons, Defendant Synergy Insurance Affiliates, LLC respectfully requests the Court to (i) dismiss Plaintiff's Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

Dated: October 30, 2025                              Respectfully submitted,

By:     */s/ Veronica A. Meza*

Ted C. Craig, Esq., FBN 0966878
Veronica A. Meza, FBN 86151
Dane E. Leitner, FBN 91181
GRAYROBINSON, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile:  (305) 416-6887
ted.craig@gray-robinson.com
veronica.meza@gray-robinson.com
dane.leitner@gray-robinson.com
danieska.cuarezma@gray-robinson.com
lourdes.federici@gray-robinson.com
rossana.dominguez@gray-robinson.com
*Attorneys for Defendant, Synergy Insurance Affiliates LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/  Veronica A. Meza*

GRAYROBINSON, P.A.